JS-6

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No.: CV 20-11332-DMG (GJSx) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CONSENT DECREE** |
| | ) |
| PARKER-HANNIFIN CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

1
2

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ..............................................1
II.     APPLICABILITY.................................................................2
III.    DEFINITIONS .....................................................................3
IV.     CIVIL PENALTY ...............................................................4
V.      COMPLIANCE REQUIREMENTS ...................................5
VI.     REPORTING REQUIREMENTS ......................................8
VII.    STIPULATED PENALTIES ...........................................10
VIII.   FORCE MAJEURE ..........................................................14
IX.     DISPUTE RESOLUTION ................................................16
X.      INFORMATION COLLECTION AND RETENTION .........19
XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ...........21
XII.    COSTS ...............................................................................22
XIII.   NOTICES ...........................................................................22
XIV.    EFFECTIVE DATE ..........................................................23
XV.     RETENTION OF JURISDICTION .................................24
XVI.    MODIFICATION ..............................................................24
XVII.   TERMINATION ................................................................24
XVIII.  PUBLIC PARTICIPATION .............................................25
XIX.    SIGNATORIES/SERVICE ..............................................25
XX.     SECTION 162(F)(2)(A)(II) IDENTIFICATION ............26
XXI.    INTEGRATION .................................................................26
XXII.   FINAL JUDGMENT .........................................................27

*Consent Decree*
*U.S. v. Parker-Hannifin Corp.*
3359651.v1

Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendant, Parker-Hannifin Corporation ("Parker"), violated Section 307 of the Clean Water Act, 33 U.S.C. § 1317.

The Complaint against Parker alleges that discharges from Parker's membrane and filter manufacturing facility in Oxnard, California (the "Facility") to the City of Oxnard's publicly owned treatment works violated federally enforceable pretreatment standards for biochemical oxygen demand ("BOD") and pH.  The Complaint further states that Parker entered an Administrative Order on Consent with EPA, but allegedly violated the terms of that agreement by failing to install treatment technology and achieve compliance with the pretreatment standards for BOD and pH by the agreed-upon deadline.

Parker does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.       JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Clean

Water Act, 33 U.S.C. § 1319(b), and over the Parties.  Venue lies in this District pursuant to 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1391(b)-(c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Parker conducts business in, this judicial district.  For purposes of this Consent Decree, or any action to enforce this Consent Decree, Parker consents to the Court's jurisdiction over this Consent Decree and any such action and over Parker and consents to venue in this judicial district.

2. For purposes of this Consent Decree, Parker agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 307 and 309 of the Clean Water Act, 33 U.S.C. §§ 1317 and 1319.

## II. APPLICABILITY

3. The obligations of this Consent Decree apply to and are binding upon the United States, and upon Parker and any successors, assigns, or other entities or persons otherwise bound by law.

4. No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Parker of its obligation to ensure that the terms of the Consent Decree are implemented. At least 30 Days prior to such transfer, Parker shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer to the United States in accordance with Section XIII (Notices).  Within 30 Days after a transfer of ownership or operation of the Facility, Parker shall provide a copy of the written transfer agreement to the United States, which Parker may assert is Confidential Business Information in accordance with the procedures of 40 C.F.R. Part 2.  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

5.    Parker shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to the environmental consultant and principal construction contractor retained to perform work required under this Consent Decree.

6.    In any action to enforce this Consent Decree, Parker shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.    DEFINITIONS

7.    Terms used in this Consent Decree that are defined in the Clean Water Act or in regulations promulgated pursuant to the Clean Water Act shall have the meanings assigned to them in the Clean Water Act or such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Complaint" means the complaint filed by the United States in this action;

"Consent Decree" means this Consent Decree;

"Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

"Discharge Permit" means the industrial wastewater discharge permit issued to Parker by the City of Oxnard, as may be periodically renewed and/or amended by the City of Oxnard.  As of the date of lodging of this Consent Decree, Parker's Permit is IWDP No. 88211.

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" has the definition provided in Section XIV.

"Facility" means Parker's membrane and filter manufacturing facility located at 2340 Eastman Avenue in Oxnard, California.

"Paragraph" means a portion of this Consent Decree identified by an arabic numeral;

"Parker" means Parker-Hannifin Corporation;

"Parties" means the United States and Parker;

"Section" means a portion of this Consent Decree identified by a roman numeral;

"United States" means the United States of America, acting on behalf of EPA;

## IV.    CIVIL PENALTY

8.    Within 30 Days after the Effective Date, Parker shall pay the sum of $390,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.    Parker shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Parker by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") Number, which Parker shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

Todd M. Burger, Esq.
Associate General Counsel
Parker-Hannifin Corporation
6035 Parkland Boulevard
Cleveland, Ohio 44124
(216) 896-2458
todd.burger@parker.com

on behalf of Parker.  Parker may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices).

10.   At the time of payment, Parker shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to the United States via email or regular mail in accordance with Section XIII.  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in <u>United States v. Parker-Hannifin Corporation</u> and shall reference the civil action number CV 20-11332-DMG (GJSx), CDCS Number, and DOJ case number 90-5-1-1-12081.

11.   Parker shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.   COMPLIANCE REQUIREMENTS

12.   <u>Treatment System Construction and Implementation Milestones</u>: Parker has selected and intends to install evaporative treatment technology at the Facility in order to achieve and maintain compliance with the Clean Water Act. Parker shall meet the following milestones for construction and implementation of its new evaporative treatment system:

a.      By May 6, 2020, Parker shall issue a purchase order for

all evaporator units necessary for the evaporative treatment system.

b.      By October 16, 2020, Parker shall submit a complete construction permit for construction of the evaporative treatment system to the City of Oxnard.

c.      By June 15, 2021, Parker shall execute a construction contract and issue a notice to proceed with construction for installation of the evaporative treatment system.

d.      By November 15, 2021, Parker shall complete construction, installation, start-up, and testing of the evaporative treatment system, shall conduct training of Parker personnel in proper operation of the evaporative treatment system, and shall take any other steps necessary to ensure that the evaporative treatment system is fully operational as of this date.

Within seven Days of completing each milestone set forth in this Paragraph, Parker shall submit a certification to EPA, consistent with Paragraph 23, confirming that the milestone has been successfully completed.

13.   Compliance With Discharge Permit Effluent Limits:  Beginning 14 Days after Parker brings the evaporative treatment system online as required by Paragraph 12.d, any failure by Parker to comply with the effluent limitations for biochemical oxygen demand ("BOD") or pH set forth in the Discharge Permit shall constitute a violation of this Consent Decree.

14.   Compliance With Discharge Permit Sampling Requirements: Beginning 14 Days after Parker brings the evaporative treatment system online as required by Paragraph 12.d, any failure by Parker to conduct sampling for

6

biochemical oxygen demand ("BOD") or pH in accordance with the procedures and schedule set forth in the Discharge Permit shall constitute a violation of this Consent Decree.

15.   <u>Sampling Results Reporting</u>:  Within 30 Days of the end of each quarter, Parker shall submit a report to EPA setting forth the results of all sampling for biochemical oxygen demand ("BOD") or pH conducted at the Facility during that quarter.  Parker may submit copies of reports submitted to the City of Oxnard or the State of California in satisfaction of this Paragraph, so long as those reports contain results for all sampling for BOD or pH conducted at the Facility during the quarter.

16.   <u>Permits</u>.  Where any compliance obligation under this Section requires Parker to obtain a federal, state, or local permit or approval, Parker shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.   Parker may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Parker has submitted timely and complete applications and has complied with all requests for provision of additional information or revisions to the permit application from the permitting authority.

17.   <u>Permanent Shutdown of 60" Casting Line and Polyethersulfone (PES) Line</u>.  If, at any time after the Effective Date, Parker determines that it is not technically or economically feasible to use an evaporative treatment system to achieve compliance with this Section V, it may elect to permanently cease operating both the 60" Casting Line and the Polyethersulfone (PES) Line at the Facility, which is the identified source of the Clean Water Act violations at issue in

7

this Consent Decree.  In the event Parker elects to permanently cease operating both the 60" Casting Line and the Polyethersulfone (PES) Line, within 5 Days of cessation Parker shall submit a certification to EPA, consistent with Paragraph 23, stating the date on which it permanently closed and ceased discharging wastewater from both the 60" Casting Line and the Polyethersulfone (PES) Line.  If Parker then proceeds to demonstrate compliance with the relevant terms of its Discharge Permit, as required by Paragraphs 13-15, for a period of three months, it shall be deemed to have completed the requirements of this Section V for purposes of Section XVII (Termination).  If Parker has also paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, it may then serve upon the United States a Request for Termination.

## VI.    REPORTING REQUIREMENTS

18.   Following entry of the Consent Decree, Parker shall submit semi-annual reports to EPA describing its effort to comply with the Consent Decree ("Semi-annual Reports").  The first Semi-annual Report, due on January 31 of each year, shall describe Parker's compliance efforts between July 1 and December 31 of the previous year.  The second Semi-annual Report, due on July 31 of each year, shall describe Parker's efforts between January 1 and June 30 of the current year.

19.   Each Semi-annual Report shall address the following:  the status of construction, implementation, and operation of the evaporative treatment system, including compliance with the milestones set forth in Paragraph 12; any problems encountered or anticipated with construction, implementation, or operation of the evaporative treatment system, together with implemented or proposed solutions; any failures to comply with the BOD and pH limits or reporting requirements in the Discharge Permit, together with implemented or

proposed solutions; and copies of any reports made to State or local agencies regarding wastewater treatment and discharge at the Facility.  Each Semi-annual Report shall also include a description of any known non-compliance with the requirements of this Consent Decree during the period covered by the report, and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

20.   If Parker violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Parker shall notify the United States and EPA of such violation and its likely duration, in writing, within 14 Days of the Day Parker first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Parker shall so state in the report.  Parker shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 45 Days of the Day Parker becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Parker of its obligation to provide the notice required by Section VIII (Force Majeure).

21.   Whenever any violation of this Consent Decree or any other event affecting Parker's performance under this Consent Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Parker shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Parker first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

22.    All reports shall be submitted to the persons designated in Section XIII (Notices).

23.    Each report or certification submitted by Parker under this Section, or under Section V, shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

24.    This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

25.    The reporting requirements of this Consent Decree do not relieve Parker of any reporting obligations required by the Clean Water Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

26.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.   STIPULATED PENALTIES

27.    Parker shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any

obligation required by the terms of this Consent Decree according to all applicable requirements of this Consent Decree and within the specified time schedules established by this Consent Decree.

28.   <u>Late Payment of Civil Penalty</u>.  If Parker fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Parker shall pay a stipulated penalty of $750 per Day for each Day that the payment is late.

29.   <u>Failure to Meet Treatment System Construction and Implementation Milestones</u>:  The following stipulated penalties shall accrue per violation per Day for each failure to meet any of the milestones set forth in Paragraph 12 of the Consent Decree:

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $300 | 1st through 14th Day |
| $600 | 15th through 30th Day |
| $750 | 31st Day and beyond |

30.   <u>Effluent Limitation Violations</u>.  A stipulated penalty of $500 shall accrue for each documented violation of Paragraph 13.

31.   <u>Sampling Requirement Violations</u>.  A stipulated penalty of $500 shall accrue for each documented violation of Paragraph 14.

32.   <u>Sampling Reporting Requirement Violations</u>.  The following stipulated penalties shall accrue per violation per Day for each failure to meet the reporting requirements of Paragraph 15 of the Consent Decree:

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $250 | 1st through 14th Day |
| $400 | 15th through 30th Day |
| $550 | 31st Day and beyond |

33.   <u>General Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $150 | 1st through 14th Day |
| $300 | 15th through 30th Day |
| $500 | 31st Day and beyond |

34.   Stipulated penalties under this Section VII shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

35.   Parker shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

36.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

37.   Stipulated penalties shall continue to accrue as provided in Paragraph 34, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the District Court, Parker shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the District Court and the United States prevails in whole or in part, Parker shall pay all accrued penalties determined by the District Court to be owing, together with interest, within 60 Days of receiving the District Court's decision or order, except as provided in subparagraph c, below.

c.      If either Party appeals the District Court's decision, Parker shall pay all accrued penalties determined to be owing, together with interest, within 30 Days of receiving the final Appellate Court decision.

38.   Parker shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 9 and 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

39.   If Parker fails to pay stipulated penalties according to the terms of this Consent Decree, Parker shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Parker's failure to pay any stipulated penalties.

40.   The payment of penalties and interest, if any, shall not alter in any way Parker's obligation to complete the performance of the requirements of this Consent Decree.

41.   Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to

the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Parker's violation of this Consent Decree or applicable law, including but not limited to an action against Parker for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## VIII.  FORCE MAJEURE

42.   "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Parker, of any entity controlled by Parker, or of Parker's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Parker's best efforts to fulfill the obligation.  The requirement that Parker exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Parker's financial inability to perform any obligation under this Consent Decree.

43.   If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Parker shall provide notice orally or by e-mail to EPA Environmental Engineer Michael Weiss (415-947-4570, Weiss.Michael@epa.gov), within 5 Days of when Parker first knew that the event might cause a delay. Within seven Days thereafter, Parker shall provide in writing to EPA an

14

explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Parker's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Parker, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Parker shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Parker from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Parker shall be deemed to know of any circumstance of which Parker, any entity controlled by Parker, or Parker's contractors knew or should have known.

44.   If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Parker in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

45.   If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Parker in writing of its decision along with the basis for its position.

46.   If Parker elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Parker shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Parker complied with the requirements of Paragraphs 42 and 43.  If Parker carries this burden, the delay at issue shall be deemed not to be a violation by Parker of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.    DISPUTE RESOLUTION

47.   Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Parker's failure to seek resolution of an issue under this Section shall preclude Parker from raising the disputed issue as a defense to an action by the United States to enforce any obligation of Parker arising under this Consent Decree.

48.   Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Parker sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless,

within 21 Days after the conclusion of the informal negotiation period, Parker invokes formal dispute resolution procedures as set forth below.

49.   <u>Formal Dispute Resolution</u>.  Parker shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Parker's position and any supporting documentation relied upon by Parker.

50.   The United States shall serve its Statement of Position within 45 Days of receipt of Parker's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Parker, unless Parker files a motion for judicial review of the dispute in accordance with the following Paragraph.

51.   Parker may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 21 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Parker's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.  The motion may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 48.

52.   The United States shall respond to Parker's motion within the time period allowed by the Local Rules of this Court.  Parker may file a reply memorandum, to the extent permitted by the Local Rules.

53.   <u>Standard of Review</u>

a.   <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 49 pertaining to the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Parker shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

b.   <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 49, Parker shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

54.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Parker under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 37.  If Parker does not prevail on

the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.   INFORMATION COLLECTION AND RETENTION

55.   The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.    obtain samples and, upon request, splits of any samples taken by Parker or its representatives, contractors, or consultants;

d.    obtain documentary evidence, including photographs and similar data; and

e.    assess Parker's compliance with this Consent Decree.

56.   Upon request, Parker shall provide EPA or its authorized representatives splits of any samples taken by Parker.  Upon request, EPA shall provide Parker splits of any samples taken by EPA.

57.   Until two years after the termination of this Consent Decree, Parker shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including

19

documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Parker's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Parker shall provide copies of any documents, records, or other information required to be maintained under this Paragraph. Parker may assert that certain documents, records, or other information requested by the United States are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Parker asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Parker. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

58. Parker may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Parker seeks to protect as CBI, Parker shall follow the procedures set forth in 40 C.F.R. Part 2.

59. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or

affect any duty or obligation of Parker to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

60.   This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint through the date of lodging.

61.   The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Clean Water Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 60.

62.   In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Parker's violations, Parker shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 60.

63.   This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Parker is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Parker's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does

not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Parker's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Water Act, 33 U.S.C. § 1251 et seq., or with any other provisions of federal, state, or local laws, regulations, or permits.

64.   This Consent Decree does not limit or affect the rights of Parker or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Parker, except as otherwise provided by law.

65.   This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.   COSTS

66.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Parker.

## XIII.   NOTICES

67.   Unless otherwise specified in this Consent Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing, submitted by either email or mail, and addressed as follows:

As to the United States by email:    eescdcopy.enrd@usdoj.gov
                                     Re: DJ # 90-5-1-1-12081
As to the United States by mail:     EES Case Management Unit
                                     Environment & Natural Resources Division
                                     U.S. Department of Justice
                                     P.O. Box 7611
                                     Washington, D.C.  20044-7611
                                     Re: DJ # 90-5-1-1-12081

22

| | |
|---|---|
| As to EPA by email: | Weiss.Michael@epa.gov |
| | Jackson.Julia@epa.gov |
| | |
| As to EPA by mail: | Michael Weiss |
| | Wastewater Section (ENF-3-1) |
| | Enforcement Division |
| | U.S. EPA Region 9 |
| | 75 Hawthorne Street |
| | San Francisco, CA 94105 |
| | |
| As to Parker: | Jeff A. Stierman |
| | General Manager |
| | Parker Hannifin Corporation |
| | Bioscience & Water Filtration Division |
| | 2340 Eastman Avenue |
| | Oxnard, CA  93030 |
| | jeffrey.stierman@parker.com |
| | |
| with a copy to: | Todd M. Burger, Esq. |
| | Parker-Hannifin Corporation |
| | Legal Department |
| | 6035 Parkland Boulevard |
| | Cleveland, OH 44124 |
| | todd.burger@parker.com |

68.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

69.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or emailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.  EFFECTIVE DATE

70.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

23

## XV.   RETENTION OF JURISDICTION

71.   The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI.  MODIFICATION

72.   The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

73.   Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 53, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

74.   After Parker has either:  (a) completed the requirements of Section V (Compliance Requirements), thereafter maintained continuous satisfactory compliance with this Consent Decree for a period of 30 months, and paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree; or (b) met all requirements of Paragraph 17 regarding permanent shutdown of the 60" Casting Line and Polyethersulfone (PES) Line, Parker may serve upon the United States a Request for Termination, stating that Parker has satisfied those requirements, together with all necessary supporting documentation.

75.   Following receipt by the United States of Parker's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Parker has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

76.   If the United States does not agree that the Consent Decree may be terminated, it shall so notify Parker in writing, and Parker may invoke Dispute Resolution under Section IX.  However, Parker shall not seek Dispute Resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.

## XVIII.   PUBLIC PARTICIPATION

77.   This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Parker consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Parker in writing that it no longer supports entry of the Consent Decree.

## XIX.  SIGNATORIES/SERVICE

78.   Each undersigned representative of Parker and the Assistant Attorney General for the Environment and Natural Resources Division of the

Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

79.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Parker agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  Parker need not file an answer to the Complaint unless or until the Court expressly declines to enter this Consent Decree.

## XX.   SECTION 162(f)(2)(A)(ii) IDENTIFICATION

80.   For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability), Paragraphs 4-5; Section V (Compliance Requirements), Paragraphs 12-17; Section VI (Reporting Requirements), Paragraphs 18-19 and 22-23; and Section X (Information Collection and Retention), Paragraphs 55-57, is restitution or required to come into compliance with law.

## XXI.  HEADINGS

81.   Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXII. INTEGRATION

82.   This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the

settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

### XXIII.   FINAL JUDGMENT

83.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Parker.

DATED:  March 8, 2021

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE